United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>CODY DOBBS,<br><br>    Defendant.<br>                                   / | No. CR 06-711 SI<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS MAY 12, 2005 SEARCH WARRANT; GRANTING IN PART DEFENDANT'S DISCOVERY MOTIONS** |

On August 10, 2007, the Court heard argument on defendant's discovery motions and the motion to suppress the May 12, 2005 search warrant. For the reasons set forth below, the Court DENIES defendant's motion to suppress, and GRANTS IN PART defendant's discovery motions.

**BACKGROUND**

On May 12, 2005, a Humboldt County Superior Court Judge issued a search warrant for defendant's residence, 3541 Osprey Terrace Road, Fortuna, California. The search warrant authorized officers to search for, *inter alia*, marijuana, scales, measuring and weighing devices, implements of marijuana cultivation, and firearms. Thompson Decl. Ex. 1 at CD00216. That same day, officers executed the search warrant, and seized 110 marijuana plants, as well as steroids and $10,000 in United States currency.[1]

Sergeant Kym Thompson of the Humboldt County Sheriff's Office prepared the affidavit in

---

[1] Officers also seized a Humboldt County property tax bill for Humboldt County APN 221-181-028, also known as 4589 Crooked Prairie Road in Redway, California. Approximately one year later, a United States Magistrate Judge issued a search warrant for 4589 Crooked Prairie Road; defendant's motion challenging this search, part of docket entry 40, is being resolved by Judge Chesney.

support of the search warrant. Thompson's affidavit states that on May 12, 2005, defendant was arrested at a large indoor marijuana growing operation. Thompson Decl. Ex. 1. Thompson describes the events leading up to defendant's arrest as follows:

> In the early morning hours on 05-12-05, [California Department of Fish and Game] Warden Bruckenstein received a telephone call from a concerned citizen who told him that there was a significant diesel fuel spill in a creek just South of exit 625, along U.S. Highway 101 in the Piercy area of Northern Mendocino County. At approximately 1030 hrs. on 05-12-05, Warden Bruckenstein and Warden Rusty Boccaleoni located a creek in that area, and saw what appeared to be diesel fuel in the water. . . . Warden Bruckenstein could hear a sound that he recognized from his experience and training as a diesel generator running in the distance. Warden Bruckenstein and Warden Rusty Boccaleoni followed the creek and the diesel fuel slick upstream until the fuel slick disappeared. . . . At the top of the hillside, Warden Bruckenstein could see two structures approximately 100 yards South of the creek. The sound of the diesel generator became louder, and Warden Bruckenstein could smell what he recognized from his experience as an odor of green marijuana. Warden Bruckenstein and Warden Rusty Boccaleoni continued walking toward the structures. They could hear pounding coming from one of the structures, and as they got closer, they could see a third structure with an open door. Through the open door, Warden Bruckenstein could see what he recognized from his experience and training as light being emitted from high pressure sodium (HPS) lamps inside the structure. Warden Bruckenstein could also see what he recognized from his experience and training as growing marijuana plants in growing beds inside the structure. Warden Bruckenstein could hear voices coming from inside the structure, and then a male subject, later identified as Cody Kyle Dobbs, exited the structure talking on a cellular phone. Warden Bruckenstein and Warden Rusty Boccaleoni detained Cody Dobbs, and then entered the structure to search for other persons, for officer safety reasons. Inside the structure they located two male subjects, later identified as Wade Allen Trabue, D.O.B. 11-16-59, and Trevor Allen Trabue, D.O.B. 12-01-87. Both subjects were also detained. Located on the property near the structures was a dark gray 2004 GMC truck, California license number 7R29583. Warden Bruckenstein said that the truck is registered to Cody Dobbs. He said that there were no other passenger vehicles located on the property.
>
> Warden Bruckenstein Mirandized all three subjects and attempted to obtain statements. All three subjects refused to make a statement. Wade Trabue did tell Warden Bruckenstein that he believed there were approximately 1000 marijuana plants growing inside the structure. Trabue said he did not own the property, and that he did not know who does.

Thompson Decl. Ex. 1 at CD00217-18. Officers arrested defendant and Wade Trabue.

Thompson's search warrant affidavit states that she conducted a check for property owned by defendant through the Humboldt County Assessor's Office internet site. *Id.* at CD00218. The records showed that defendant owned two properties, 3541 Osprey Terrace Road and 3580 Osprey Terrace Road, both in Fortuna, California. *Id.* Thompson also conducted a California Department of Motor Vehicles driver's license check for defendant, which revealed a driver's license issued to defendant, and listed a residence address of 3580 Osprey Terrace Road. *Id.* at CD00219.

2

Thompson's affidavit states that she spoke with Commander Ron Prose of the Humboldt County Drug Task Force (HCDTF). Thompson's affidavit states,

> [Prose] told me that he is familiar with Cody Kyle Dobbs. Commander Prose told me that he knows that Cody Dobbs lives at 3541 Osprey Terrace in Fortuna California, and provided me with a physical description of the residence and driving directions to the residence. Commander Prose told me that he has conducted surveillance on the residence within the past ten days, and that he has seen Cody Dobbs at the residence within the past ten days. . . . Commander Prose told me that at approximately 1600 hrs. on 05-12-05, he made contact with the occupant of the residence at 3580 Osprey Terrace, Fortuna California, identified as Thomas Allen Golden. Thomas Golden told Commander Prose that the house belongs to Cody Dobbs, and that he has been renting the house from Cody Dobbs for the past two months. Thomas Golden said that he works for Cody Dobbs doing construction work in the Carlotta California area, and that he earns $20.00 per hour. Thomas Golden voluntarily showed Commander Prose an indoor marijuana cultivation operation inside of the garage of the residence of 3580 Osprey Terrace, Fortuna California. Thomas Golden told Commander Prose that he is a medical marijuana patient. Thomas Golden told Commander Prose that the indoor marijuana cultivation operation was set up inside the residence when he moved in, and the 125 plants that are currently growing is the second cycle of marijuana plants being cultivated since he moved in. Thomas Golden said that he received approximately 1 ½ pounds of marijuana from Cody Dobbs and a reduction in rent for taking care of the first grow, and that Cody Dobbs took the remaining approximately 3 pounds of marijuana.

*Id*. at CD00219-20.

## DISCUSSION

**I.      Motion to suppress**

Defendant challenges the May 12, 2005 search warrant on three grounds. First, defendant contends that Sergeant Thompson intentionally or recklessly omitted material facts from the search warrant that, had they been included, would have negated probable cause. Second, defendant contends that the statements by Thomas Golden were unreliable and should not have been considered by the magistrate when reviewing the affidavit. Third, defendant argues that the facts showing defendant's involvement in marijuana trafficking was insufficient to support a search of his residence.

**A.      *Franks* challenge**

Under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), a party is entitled to an evidentiary hearing if he makes a substantial preliminary showing that a false statement was: (1) included in the affidavit for the warrant; (2) made knowingly and intentionally, or with reckless disregard for the truth;

3

1  and (3) necessary to the finding of probable cause. A "substantial preliminary showing" of such facts
2  would entitle the defendant to an evidentiary hearing. *See id.* at 71-72. However, no hearing is required
3  if, setting aside the "material that is the subject of the alleged falsity or reckless disregard, . . . there
4  remains sufficient content in the warrant affidavit to support a finding of probable cause." *Id*. at 172.

Defendant argues that Sergeant Thompson intentionally omitted three categories of material information: (1) statements made by Wade Trabue to Warden Bruckenstein; (2) Commander Prose's suspicion that defendant was a marijuana distributor; and (3) the circumstances surrounding Commander Prose's conversation with Thomas Golden, defendant's tenant. The Court finds that none of these alleged omissions was material to the probable cause finding.

### **(1)** **Statements by Wade Trabue**

Defendant argues that Thompson omitted from the affidavit four statements that Wade Trabue made to Warden Bruckenstein: (1) Trabue stated he thought the wardens were at the property because of "diesel"; (2) Trabue told the warden that there were approximately 1000 marijuana plants at the site where Trabue and defendant were arrested; (3) Trabue admitted to the warden that the marijuana grows were Trabue's; and (4) Trabue stated that keys found on Trabue's person would open the gates to the property.

As an initial matter, Thompson's affidavit includes Wade Trabue's statement regarding 1,000 marijuana plants, and thus defendant is incorrect that this information was omitted from Thompson's affidavit. *See* Thompson Decl. Ex. 1 at CD00218. With regard to the other three statements, there is no evidence in the record that Warden Bruckenstein related these statements to Thompson, and thus there is no evidence to even suggest that Thompson intentionally omitted these statements.

Further, none of the three omitted statements was material to a finding of probable cause that the defendant was involved in the marijuana grow at which he was arrested. Trabue's statement that he thought the wardens were on the property due to "diesel" has no bearing on defendant's role in the marijuana grow. Similarly, Trabue's admissions that the marijuana grows were his and that his keys fit the locks to the gates on the property implicate Trabue, but they do not exculpate defendant. Thompson's affidavit stated officers saw defendant exit the marijuana grow structure, and that Trabue

4

told the officers that Trabue did not own the property and that he did not know who did. Thus, the affidavit both directly linked defendant to the marijuana grow site by virtue of defendant's presence inside the structure, and also contained information suggesting that defendant did not own the property. The inclusion of Trabue's statement regarding diesel, or his admissions about the marijuana grow site and the property, would not have negated the probable cause finding for defendant.

### (2) Omission of Commander Prose's suspicion that defendant was marijuana trafficker

Thompson's affidavit states that Commander Prose informed Thompson that Prose was "familiar" with defendant, and that Prose had conducted surveillance on defendant's residence in May 2005. *See* Thompson Decl. Ex. 1 at CD00219. Although somewhat unclear, defendant appears to argue that Thompson's affidavit should have explained why Prose was surveilling defendant. Defendant's contention lacks merit because defendant has failed to show that Thompson was ever aware of such information. Moreover, if anything, the inclusion of such information would likely only buttress the probable cause finding.

### (3) Omissions related to Commander Prose's interview with Golden

Defendant argues that Thompson should have included the following four facts regarding Commander Prose's interview with Golden: (1) Commander Prose conducted his conversation with Golden in the presence of Sergeant Wayne Hanson from the Humboldt County Sheriff's Office; (2) Sergeant Hanson's belief that Golden's marijuana grow was within Humboldt County Proposition 215 guidelines; (3) Commander Prose took photographs of Golden's marijuana grow; and (4) Commander Prose permitted Golden to drive to the dump with marijuana plants in his truck even though Golden had told Prose that he had recently smoked marijuana. These four facts were included in Commander Prose's "Investigation Report" but not included in Sergeant Thompson's search warrant affidavit. *See* Defendant's Exhibits at CD00306.

As with defendant's other *Franks* challenges, defendant has failed to show that Thompson was aware of and intentionally omitted these facts. More importantly, none of these alleged omissions

5

1 would have been material to the probable cause finding. The fact that Sergeant Hanson was present
2 during the conversation with Golden does not affect the reliability of Golden's statements. The fact that
3 Hanson believed Golden's marijuana grow was within Humboldt County Proposition 215 guidelines
4 does not diminish the probable cause finding. Thompson's affidavit included the fact that Golden stated
5 he was a medical marijuana patient. Even if Golden's marijuana grow was within Proposition 215
6 guidelines, Golden had also informed Prose that there was an indoor marijuana cultivation operation set
7 up in the residence when he moved in, and that defendant had taken approximately three pounds of
8 marijuana from that previous grow. Finally, the facts that Prose took a picture of Golden's marijuana
9 grow, and that Prose allowed Golden to drive to dump the marijuana plants, have no bearing on a
10 probable cause determination related to defendant.

### B. Information from Thomas Golden

Defendant contends that Golden is not a reliable source, and thus that the probable cause finding cannot be supported by Golden's information. Courts look to several factors to determine the reliability of an informant's tip. A known informant's tip is thought to be more reliable than an anonymous informant's tip. *See Florida v. J.L.*, 529 U.S. 266, 271 (2000); *United States v. Rowland*, 464 F.3d 899, 907 (9th Cir. 2006). "Citizen informants, while not carrying the same presumption of reliability as police officers, nevertheless require less evidence to establish their veracity than criminal informants." *United States v. Angulo-Lopez*, 791 F.2d 1394, 1397 (9th Cir. 1986) (internal citations omitted). An informant's admissions against penal interest weigh in favor of reliability. *See id*. In addition, an agent's face-to-face encounter with an informant may bolster an informant's reliability because "officers may 'perceive and evaluate personally an informant's mannerisms, expressions, and tone of voice' and because [the] informant knows that he may be tracked down and held accountable for false assertions." *Rowland*, 464 F.3d at 908 (quoting *United States v. Romain*, 393 F.3d 63, 73 (1st Cir. 2004)). Further, an informant's tip is considered more reliable if the informant states how the informant came to know the information. *See Spinelli v. United States*, 393 U.S. 410, 416 (1969), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Defendant contends that Golden is not a reliable informant because Thompson's affidavit does

6

not state that Golden has provided information in the past; Golden's penal interests were never at stake because Golden stated he was a medical marijuana patient; and officers did not independently verify the information Golden provided.

The Court disagrees, and finds several indicia of reliability to support Golden's information. First, contrary to defendant's assertions, Golden's penal interests were implicated because Golden admitted that he had previously grown approximately three pounds of marijuana for defendant and not for his personal medical use. Second, Golden was not an anonymous informant, but rather was known to the officers, who met with him face-to-face. *See Rowland*, 464 F.3d at 907-08. Third, officers verified Golden's statement that defendant owned the house in which Golden lived. Finally, the basis for Golden's information was Golden's own personal knowledge. Each of these factors weighs in favor of establishing Golden's reliability, and the judge did not err by relying on Golden's information in finding probable cause.

### C.     Probable cause to search defendant's residence

Finally, defendant contends that Thompson's affidavit did not establish probable cause to search defendant's residence. The issuance of a search warrant is reviewed for clear error. *See United States v. Baldwin*, 987 F.2d 1432, 1435 (9th Cir.), *cert. denied*, 508 U.S. 967 (1993). This Court must determine whether there was a "substantial basis" for concluding that the warrant was supported by probable cause. *See United States v. Brown*, 951 F.2d 999, 1002 (9th Cir. 1991). The judge making the original determination of probable cause is accorded significant deference by the reviewing court. *See United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc) (applying totality of circumstances analysis to uphold warrant and emphasizing "deferential approach" of reviewing courts). Probable cause is defined as "a fair probability that contraband or evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238; *see also United States v. Flores*, 679 F.2d 173, 175 (9th Cir. 1982).

Under the totality of the circumstances, the Court concludes that the affidavit contained sufficient facts to support the judge's finding that there was a fair probability that 3541 Osprey Terrace contained evidence of marijuana cultivation and distribution. First, the affidavit supported a finding that defendant was involved in marijuana trafficking. The Court finds it significant that the day the search

warrant was issued, defendant was arrested at a large scale marijuana grow site. Defendant's truck was the only vehicle found at the marijuana cultivation site. In addition, Golden told officers that during the previous two months he had grown marijuana for defendant, and had provided defendant with approximately three pounds of marijuana. These facts are more than sufficient to establish probable cause to believe that defendant was involved in narcotics trafficking. *See United States v. Mills*, 280 F.3d 915, 920-21 (9th Cir. 2002); *United States v. Carranza*, 289 F.3d 634, 641 (9th Cir. 2002); *United States v. Valencia-Amezuca*, 278 F.3d 901, 907-908 (9th Cir. 2002).

Second, based upon the connection between defendant and marijuana trafficking, the judge was entitled to rely on Thompson's training and experience to conclude that there was a fair probability that evidence of such trafficking would be found at defendant's residence. Thompson's affidavit states, "I know from training and experience that persons involved in the sales of controlled substances, including marijuana, will keep paraphernalia including packaging materials, scales and pay and owe records," and that such items would be found at defendant's residence. Thompson Decl., Ex. 1 at 7. Courts have frequently recognized that "in narcotics cases, evidence is likely to be found where the dealers live." *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002); *see also United States v. Hernandez-Escarcega*, 886 F.2d 1560, 1567 (9th Cir. 1989); *Angulo-Lopez*, 791 F.2d at 1399.

## II.    Discovery motions

At the hearing, the government agreed to produce, at the time it files its Pretrial Conference Statements, the grand jury transcripts and all *Brady* and *Giglio* materials related to the witnesses the government intends to call at trial. The Court also GRANTS IN PART defendant's motion to compel the personnel files of DEA Special Agent Mark Nelson. Pursuant to a protective order, the government shall produce the materials attached as Exhibit A to the government's *in camera* submission.

///

**CONCLUSION**

For the foregoing reasons, the Court hereby DENIES defendant's motion to suppress the May 12, 2005 search warrant, and GRANTS IN PART defendant's discovery motions. (Docket Nos. 39-43).

**IT IS SO ORDERED.**

Dated:   August 10, 2007

SUSAN ILLSTON
United States District Judge